# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

Leslie Rentas, individually,

    Plaintiff,

v.

MICHAEL MACK, individually; and DRS TRAINING & CONTROL SYSTEMS, LLC, a Florida limited liability company,

    Defendants.

Case No. _____

## **COMPLAINT**

Comes Now, the Plaintiff, Leslie Rentas ("Ms. Rentas"), by and through undersigned, and sues Michael Mack ("Mr. Mack") individually, and DRS Training & Control Systems, LLC, a Florida limited liability corporation ("DRS") (collectively referred to hereinafter as the "Defendants"), and in support thereof, states as follows:

### Nature of the Action, Parties, Jurisdiction and Venue

1. This is an action for damages against Mr. Mack individually and his former employer, DRS, stemming from underlying sexual harassment conduct which in turn gives rise to several additional claims, including, but not limited to:

wrongful termination, violation of Florida's Private Sector Whistleblower Act, intentional infliction of emotional distress, and battery.

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1331. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C.§1367.

3. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), since: (i) DRS's office is located within Okaloosa County, Florida and (ii) a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Okaloosa County, Florida.

4. Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 2000e-5(k) and Fed. R. Civ. P. 54.

5. Ms. Rentas filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. A true and correct copy of Ms. Rentas's EEOC Complaint is attached hereto as **Exhibit A**.

7. On or about July 13, 2021, Ms. Rentas received a Notice of Right to Sue from the EEOC. A true and correct copy of that notice is attached hereto as **Exhibit B**.

8. This action is commenced within 90 days of receipt of the aforementioned notice.

9. All conditions precedent to bringing this cause of action have taken place, been waived, or have otherwise been satisfied.

10. DRS's principal place of business is located at 2345 Crystal Drive, Suite 1000, Arlington, Virginia but it maintains at least one office in Florida, located at 645 Anchors St Northwest, Fort Walton Beach, Florida 32548.

11. At all times material hereto, Ms. Rentas was a resident of Okaloosa County, Florida and an employee of DRS's Fort Walton Beach, Florida location.

12. At all times material hereto, Mr. Mack was a resident of the State of Florida and was also an employee of DRS's Fort Walton Beach, Florida location.

General Allegations

13. On or about October 2, 2018, Ms. Rentas received an offer of employment from DRS. A true and correct copy of that correspondence is attached hereto as **Exhibit C**.

14. DRS extended this offer after being impressed with Ms. Rentas's work ethic and quality work product during the course of DRS's interactions with Ms. Rentas in her previous employment capacity.

15. Ms. Rentas began working at DRS in on or about October 2018.

16. Mr. Mack was a Senior Program Manager with supervisory authority over Ms. Rentas and direct supervisory authority over Ms. Rentas's direct supervisor, Todd Zielinski, Director of Contracts and Compliance ("Mr. Zielinski").

17. Throughout Plaintiff's employment, Ms. Rentas was the subject of consistent, egregious, and humiliating *quid pro quo* and hostile work environment sexual harassment from a supervisor, Mr. Mack, who acted both individually and on behalf of DRS.

18. This discrimination was due to Ms. Rentas's sex, specifically, her status as a female.

19. During the latter part of the month of October of 2018, Mr. Mack invited Ms. Rentas to his home because his wife was out of town and informed her that one of Ms. Rentas's co-workers, Barbara Vizzi ("Ms. Rentas") would also be there.

20. Ms. Rentas declined Mr. Mack's invitation.

21. Between November 26, 2018 and November 28, 2018, Ms. Rentas was required as a condition of her employment to travel out of state with Mr. Mack ("First Trip").

22. During the First Trip, Mr. Mack made several inappropriate comments to Ms. Rentas Plaintiff about her body, and during one car ride, caressed Ms. Rentas's arm, placed his hand on Ms. Rentas's leg and in the same motion, began running his hand up Ms. Rentas's leg toward her pelvis.

23. Ms. Rentas quickly rebuffed Mr. Mack's sexual advance and indicated her displeasure with Mr. Mack's sexual advance.

24. Mr. Mack responded by noting that it was "weird" that Ms. Rentas did not like people in her "personal space" and indicated his frustration with Ms. Rentas's rejection of unwanted sexual advance.

25. Mr. Mack began treating Ms. Rentas poorly as a result of her rejection of his sexual advances.

26. Mr. Mack frequently used excessively obscene, rude, and harassing language when speaking to Ms. Rentas, for instance, stating that Ms. Rentas was "fucking stupid" on multiple occasions.

27. In one instance, Mr. Mack excoriated Ms. Rentas in an e-mail where other DRS employees were copied, which prompted Mr. Zielinski to instruct Ms. Rentas not to "…take any further action with Michael on this topic or respond in any manner[,]" and advised that he "…forwarded this to the attention of HR and Ethics." A true and correct copy of this March 13, 2019 e-mail exchange is attached hereto as **Exhibit D**.

28. In an attempt to resolve the tension between Mr. Mack and Ms. Rentas evident from the March 13, 2019 e-mail exchange, Dave Hammond, Senior Leader of Programs ("Mr. Hammond"), asked Mr. Zielinski to ask Ms. Rentas if she would join Mr. Hammond and Mr. Mack for lunch.

29. Ms. Rentas refused the invitation, telling Mr. Zielinski – among other things – that she did not want to go to lunch with Mr. Mack, that she did not want to

work on his program anymore, and that Mr. Mack was extremely difficult to work with.

30. Later, Mr. Hammond came to Ms. Rentas's office and stated "So I hear you don't want to go to lunch with Michael."

31. Ms. Rentas responded that she did not and that her husband "…advised me not to go to lunch with [Mr. Mack]."

32. By this point, Ms. Rentas had apprised her husband of Mr. Mack's sexually harassing behavior.

33. Mr. Hammond reacted angrily to Ms. Rentas's refusal and stormed out of her office.

34. For months thereafter, Mr. Hammond refused to speak to Ms. Rentas and consistently avoided her in the workplace.

35. There was no further action taken by DRS regarding Mr. Mack's harassing e-mail or Ms. Rentas's requests to Mr. Zielinski and Mr. Hammond to be removed from working with Mr. Mack due to Mr. Mack's rude and unprofessional conduct.

36. After their return from the First Trip, Mr. Mack, became more persistent with his advances toward Ms. Rentas by, *inter alia*:

    a. coming into her office without permission;

    b. persistently attempting to isolate Ms. Rentas[1];

    c. repeatedly touching Ms. Rentas without her consent and despite Ms. Rentas's repeated advisory that she did not like being touched and her requests that Mr. Mack not touch her;

    d. on several occasions Mr. Mack came into Ms. Rentas's office and began rubbing Ms. Rentas's arm without her consent, at which point Ms. Rentas told him stop and leave her office;

    e. on another occasion, Mr. Mack came into Ms. Rentas's office and began rubbing Ms. Rentas' shoulders while simultaneously reaching down toward her chest in an attempt to touch Ms. Rentas's breasts without her consent, at which point Ms. Rentas yelled at Mr. Mack to "[g]et the fuck out!"[2];

    f. repeatedly engaging in patently offensive discussions of a sexual nature in front of Ms. Rentas and others, and stating "I don't have sex and need it," stating that "Ms. Vizzi doesn't like sex," and stating that "men have needs."

37. Between August 1 and August 3, 2019, Ms. Rentas traveled with Mr. Mack a second time as a condition of her employment ("Second Trip").

---

[1] That is, Mr. Mack repeatedly attempted to "…get [Ms. Rentas] alone."
[2] After Mr. Mack departed, the door to Ms. Rentas's office was left open. Ms. Rentas's colleague, Ms. Vizzi, came out of her office, walked over to Ms. Rentas's office and stared in, in apparent disbelief over the interaction which took place shortly before. Despite this highly visible and disruptive incident, DRS refused to act.

38. During the Second Trip, Mr. Mack again made advances toward Ms. Rentas, inviting her to come to his room for drinks, which she declined.

39. Mr. Mack's treatment of Ms. Rentas deteriorated further still in the aftermath of her rejections of Mr. Mack's sexual advances during the Second Trip.

40. After returning from the Second Trip, Mr. Mack retaliated against Ms. Rentas for her numerous refusals of his sexual advances by:

   a. spreading false rumors about Ms. Rentas to her co-workers and supervisors which led to a palpable change in her treatment around the workplace;

   b. Mr. Mack told Dave Hammond and other upper-management personnel that Ms. Rentas "never worked" while she was on business trips, that she "did nothing"; and

   c. on several occaisions, Mr. Mack entered into Ms. Rentas's computer files without her permission and deleted or otherwise modified work-related items from Ms. Rentas's computer in an effort to sabotage her work.  Eventually Lakeisha Straka-Conway, one of Ms. Rentas's colleagues at DRS, requested DRS's IT department to lock Mr. Mack out of Ms. Rentas's files.

41. On or about September 23 through September 26, 2019, Mr. Mack ordered Ms. Rentas to travel with him once again.

42. During this trip, Mr. Mack:

    a. touched Ms. Rentas's hand, leg, and arm;

    b. made inappropriate remarks about Ms. Rentas's body, stating that her skin was "soft" and stating that she should leave her husband because he is bad;

    c. asked inappropriate and embarrassing questions regarding whether Ms. Rentas's body has gone back to normal after having kids, about Ms. Rentas's miscarriages; and

    d. again asked Ms. Rentas to join him in his hotel room to have drinks.

43. Once again, Mr. Mack's advances were declined by Ms. Rentas, and once again, Mr. Mack responded to Ms. Rentas's rejections by spitefully spreading rumors about Ms. Rentas upon their return.

44. Mr. Mack reportedly told Dave Hammond and other upper-management personnel at DRS that:

    a. Ms. Rentas was written up by DRS's human resources department for "throwing" herself at him;

    b. Ms. Rentas sat on his desk because she wanted to show her legs off to Mr. Mack;

    c. Ms. Rentas would get into vehicles with seemingly random men while away on business and would not return until the morning; and

    d.  Ms. Rentas has "mental issues."

45.    Mr. Mack also told Ms. Rentas that Mr. Hammond "…is going to get [Ms. Rentas] fired" because Ms. Rentas "did not know contracts."

46.    Mr. Mack also told Ms. Rentas that Mr. Zielinski "will never stick up for [Ms. Rentas] again because [Mr. Hammond] told [Mr. Zielinski] its [Mr. Mack's] show."

47.    Ms. Rentas again spoke to Mr. Zielinski and requested that she be removed from working on Mr. Mack's program.

48.    Mr. Zielinski told Ms. Rentas that her employment would be terminated if she did not travel with Mr. Mack.

49.    In large part due to the vicious rumors spread by Mr. Mack, Ms. Rentas was treated poorly in the workplace both by DRS management, including by Mr. Zielinski and Mr. Hammond, and fellow employees.

50.    Mr. Mack's constant harassment and mistreatment of Ms. Rentas, and the mistreatment Ms. Rentas suffered from her colleagues at DRS, produced palpable physical damage to Ms. Rentas.

51.    Ms. Rentas suffered frequent anxiety attacks – even being hospitalized on one occasion.

52. Ms. Rentas suffered two miscarriages during the course of her employment with DRS, despite being in satisfactory physical condition and having no prior history with pregnancy difficulties.

53. Ms. Rentas's mental health deteriorated so much that she began seeking psychiatric counseling for the stress and emotional trauma caused DRS's management, in particular, by Mr. Mack.

54. Ms. Rentas also began to dress differently in an effort to dissuade Mr. Mack from making sexual advances, such as not wearing dresses or skirts, wearing long-sleeve clothing, and other clothing choices which eventually prompted fellow DRS employees to ask why she began dressing so oddly.

55. In or about late November 2019, Ms. Vizzi rushed into Ms. Rentas's office and stated "I can't take it anymore" and that she thought she was "…just being a good friend and [Mr. Mack] put his hand between my legs."

56. Ms. Vizzi and Ms. Rentas began discussing the sexual harassment and mistreatment they suffered from Mr. Mack, at which point Ms. Vizzi revealed that Mr. Mack spread the rumors discussed above, stating "that's what's being told to management."

57. On or about December 9, 2019, Ms. Vizzi contacted Angi Mims, Human Resources Director ("Ms. Mims"), regarding Mr. Mack's sexual harassment.

58. Ms. Rentas participated in this investigation and assisted Ms. Mims by describing Mr. Mack's sexual harassment directed at her and by directing Ms. Mims to interview Lakeisha Straka-Conway and Ms. Rentas's assistant, Britany Kinsey.

59. On or about December 19, 2019, Mr. Mack's employment with DRS was terminated, although the precise rationale for Mr. Mack's termination is unknown.

60. Despite Mr. Mack's termination, abuse and mistreatment from Mr. Hammond, Mr. Zielinski, and others continued.

61. Brian Botts, a Project Manager at DRS ("Mr. Botts"), informed Ms. Rentas "I'm just going to let you know, Dave Hammond doesn't believe it happened[,]" that is, that the sexual harassment alleged by Ms. Rentas and others by Mr. Mack, actually took place.

62. Mr. Botts further elaborated that Mr. Hammond's position was well-known, stating, "[i]t's all over the office."

63. Indeed, Ms. Rentas herself overheard Mr. Hammond stating that he believed Mr. Mack was falsely accused of sexual harassment.

64. On another occasion, Michael Harlan, a Project Manager at DRS, stated to Ms. Rentas and Ms. Vizzi that he would not travel anymore that year because he did not want to be "accused of anything."

65. On or about December 11, 2020, that is, on or about the days Ms. Rentas was being interviewed in connection with Mr. Mack's sexual harassment investigation, Mr. Zielinski requested Ms. Rentas's termination according to internal documents produced by DRS. *See* **Exhibit E** attached hereto.

66. The rationales provided by Mr. Zielinski in his request for termination were either fabricated out of whole cloth, grossly exaggerated, or highly misleading.

67. Despite satisfactory, and in certain instances, excellent job performance, Ms. Rentas was placed on a Performance Improvement Plan ("PIP")

68. Additionally, upon information and belief, other employees received raises despite having similar or worse performance evaluations than Ms. Rentas and having less difficult programs to work with than Ms. Rentas.

69. Ms. Rentas's employment was terminated by DRS in or about April 2020.

## Count I
## Violation of 42 U.S.C. §2000e-2(a) Against DRS

70. Ms. Rentas reincorporates herein the allegations within Paragraphs 1 through 72.

71. This is a cause of action for violation of 42 U.S.C. §2000e-2(a).

72. Ms. Rentas belongs to a protected group, that is, Ms. Rentas is a woman.

73. Ms. Rentas was subject to unwelcome sexual harassment by her supervisor and fellow DRS employee, Mr. Mack, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature as detailed above in Paragraphs (collectively, the "Harassment").

74. The Harassment was based on Ms. Rentas's sex.

75. The Harassment was sufficiently severe or pervasive to alter the terms and conditions Ms. Rentas's employment and create a discriminatorily abusive working environment as evidenced by the severe psychological toll taken on Ms. Rentas.

Respectfully submitted this 11th day of 2021.

> LAW OFFICES OF JOHN W. ROBERTS, PLLC
>
> */s/ John W. Roberts*
> JOHN W. ROBERTS, ESQ.
> Florida Bar No. 108570
> STEPHEN F. BARBER, ESQ.
> Florida Bar No. 1018463
> 12273 US Highway 98, West, Suite 204
> Miramar Beach, Florida 32550
> Tel: 850.250.0887 | Fax: 850.250.2612
> E-mail: john@johnwrobertslaw.com
> Paralegal: christina@johnwrobertslaw.com